UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80320-CIV-ROSENBAUM/SELTZER

SANDRA K. TRUJILLO and
SARA ANNE TRUJILLO,

    Plaintiffs,

vs.

USAA CASUALTY INSURANCE
COMPANY, a Texas Corporation,

    Defendant.
_____/

### ORDER ON DEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S ORDER

This matter is before the Court upon Defendant's Appeal and Written Objections to Magistrate Judge's Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel [D.E. 59] ("Defendant's Appeal"). The Court has reviewed Defendant's Appeal, the magistrate judge's Order, and the case file. Upon careful consideration, the Court now partially overturns the magistrate judge's Order.

*I. Background*

Plaintiffs Sandra K. and Sara Anne Trujillo filed a one-count, bad-faith action against their automobile insurer, Defendant USAA Casualty Company, asserting that Defendant failed to timely settle a claim arising out of an accident between Sara Anne Trujillo and Gustavo Flores. *See* D.E. 24-1. Plaintiffs contend that, as a result of Defendant's alleged bad faith, Mr. Flores took his case to trial and later obtained a judgment of over $500,000, for which the Trujillos are personally liable. *Id.* at 4. The case was referred to the magistrate judge for disposition of all pretrial discovery

motions. *See* D.E. 17-18.

During discovery, Plaintiffs' counsel deposed Defendant's claim adjuster, Robert Scoville. At the deposition, Defendant's counsel raised several objections based on work-product doctrine and attorney-client privilege and directed Mr. Scoville not to answer certain questions. In particular, Plaintiffs sought information regarding Defendant's decision not to offer Mr. Flores an extra-contractual payment—*i.e.*, money in excess of the Trujillos' policy limits.[1] *See* D.E. 54 at 5-7. Plaintiffs later filed a Motion to Compel Deposition Testimony of Robert Scoville, arguing that the cited privilege and doctrine could not be used to prevent Mr. Scoville from answering Plaintiffs' questions. *See* D.E. 54.

On June 18, 2012, the magistrate judge granted in part and denied in part Plaintiffs' Motion to Compel. *See* D.E. 57. Defendant now appeals two portions of that Order, asserting that they are "clearly erroneous and contrary to well-established law." D.E. 59 at 1. First, Defendant appeals the magistrate judge's finding "that USAA CIC's ability to assert the attorney-client privilege is limited only to discussions that Mr. Scoville had with USAA CIC's in-house counsel regarding USAA CIC's evaluation and strategy" of the bad-faith claim. *Id.* Second, Defendant appeals the magistrate judge's conclusion "that Mr. Scoville's determination and decision whether to offer extra-contractual money during the underlying case is discoverable." *Id.*

## II.  *Discussion*

A party may object to a magistrate judge's order; however, a reviewing court may modify or set aside the order only if it is "clearly erroneous or contrary to law." Rule 72(a), Fed. R. Civ. P;

---

[1] Plaintiffs also sought additional information from Mr. Scoville, including whether Defendant had developed a strategy for settling the case at mediation. *See* D.E. 54 at 5. Because Defendant appeals just two portions of the magistrate judge's Order, the Court does not address arguments in Plaintiffs' Motion to Compel unrelated to the rulings challenged by Defendant.

Local Magistrate Rule 4(a), S.D. Fla; *see also Merrill-Stevens Yacht Sales, LLC v. FR Lurssen Werft, GmbH & Co. KG*, 2008 WL 2690798, at *2 (S.D. Fla. July 2, 2008). "A finding is clearly erroneous if 'the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed.'" *Id.* (citing *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997)). "The mere fact that a reviewing Court might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Pendlebury v. Starbucks Coffee Co.*, 2007 WL 4592267, at *1 (S.D. Fla. Dec. 28, 2007).

**A. Applicability of the Attorney-Client Privilege to the Underlying Action**

In diversity actions such as this one, state law governs the applicability of the attorney-client privilege. *1550 Brickell Associates v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008). Florida law defines the attorney-client privilege and allows an attorney's client "to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." § 95.502, Fla. Stat. (2011). Under Florida law, the confidentiality of attorney-client communications "is an interest traditionally deemed worthy of maximum legal protection." *State Farm Fla. Ins. Co. v. Puig*, 62 So. 3d 23, 27 (Fla. 3d DCA 2011).

The Florida Supreme Court recently held that the attorney-client privilege remains inviolate in first-party bad-faith actions. *Genovese v. Provident Life and Accident Ins. Co.*, 74 So. 3d 1064, 1069 (Fla. 2011). Thus, where an insured alleges bad faith and sues his or her own insurer, "the insured may not discover those privileged communications that occurred between the insurer and its counsel during the underlying action." *Id.* at 1068. As the *Genovese* Court explained, unlike for the work-product doctrine, "there is no exception under section 90.502 that allows the discovery of

attorney-client privileged communications [even if] the requesting party has demonstrated need and undue hardship." *Id.*

The magistrate judge's Order correctly acknowledges the holding in *Genovese*. *See* D.E. 57 at 5. It continues, however, by stating that "Mr. Scoville's entitlement to assert the attorney-client privilege is narrow and limited only to discussions he had with in-house counsel regarding the company's planned defense to the present bad-faith lawsuit. Information relating to Defendant's handling of the underlying lawsuit is not privileged." *Id.* at 6-7. While the *Genovese* Court did, in fact, note that "underlying claim materials are 'necessary to advance [a first-party bad-faith] action'" and therefore fall within the confines of the exception to the work-product doctrine, no such exception is available for materials protected by the attorney-client privilege. *Genovese*, 74 So. 3d at 1068 (quoting *Allstate Indemnity Co. v. Ruiz*, 899 So. 2d 1121, 1124 (Fla. 2005)). Therefore, to the limited extent that the Order denies the application of the attorney-client privilege to communications between Defendant and its counsel concerning the underlying lawsuit, *Genovese* precludes such a ruling.

**B. Discovery of Defendant's Determination of Whether to Offer Extra-Contractual Money**

Defendant next objects to the Order's ruling that Mr. Scoville's decision not to offer a settlement exceeding Plaintiffs' policy limits is discoverable. *See* D.E. 57 at 6; D.E. 59 at 8-13. Defendant argues that the information is protected by both the attorney-client privilege and the work-product doctrine. Before addressing Defendant's objections in this regard, the Court pauses to clarify that it does not understand Defendant to challenge the magistrate judge's conclusions that neither the attorney-client privilege nor the work-product protection precluded Mr. Scoville from having to answer a question regarding whether he had advised the insured of the potential verdict

4

range if the case went to trial, as well as from having to provide information regarding Mr. Scoville's valuation of the underlying claim.[2] Therefore, this analysis focuses solely on the narrow issue of whether the Order erred in requiring Mr. Scoville to answer questions concerning his decision not to offer a settlement that exceeded the policy's limits.

**1. Attorney-Client Privilege**

As noted above, in Florida, the attorney-client privilege protects all communications between Defendant and its counsel concerning both the underlying claim and Defendant's defense of the present bad-faith lawsuit. Mr. Scoville testified at his deposition that he did not have the authority to offer extra-contractual money and that the possibility was instead evaluated by Defendant's in-house counsel. *See* D.E. 56-4 at 11, 28. Therefore, as Defendant observes, "[a]nswering Plaintiffs' questions regarding why USAA CIC did not offer extra-contractual money to settle the lawsuit" would require Mr. Scoville to reveal his protected communications with Defendant's in-house counsel. D.E. 59 at 9. Defendant cannot be compelled to provide information protected by the attorney-client privilege.

**2. Work-Product Doctrine**

Unlike attorney-client privilege, claims of work-product protection are governed by federal law, even in diversity cases. *Estridge v. Target Corp.*, 2012 WL 527051, at *4 (S.D. Fla. Feb. 16, 2012). Rule 26(b)(3), Fed. R. Civ. P., provides, "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, . . . insurer, or agent)." An exception exists where the party seeking the materials demonstrates "that it has substantial need for the materials to

---

[2]The Court agrees with the magistrate judge's holdings in these regards.

prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* In the context of bad-faith actions, federal courts often recognize that an insurer's claim file 'is so integral to proving bad faith that an insured can meet the substantial need burden.'" *Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 668 (N.D. Ga. 2008) (internal quotations omitted). Moreover, bad-faith plaintiffs usually will not be able to obtain the information in the claim file from another source because the claim file "is a unique, contemporaneously prepared history of the company's handling of the claim"; in a bad-faith action, "the need for the information in the file is not only substantial, but overwhelming." *Id.* (quoting *In re Bergeson*, 112 F.R.D. 692, 697 (D. Mont. 1986)).

Here, Plaintiffs have a substantial need to discover information in the claim file related to Defendant's handling of the underlying claim (assuming such information is not protected by the attorney-client privilege). Defendant argues, however, that the information Plaintiffs seek extends into protected materials concerning Defendant's defense of the present bad-faith lawsuit. In particular, Plaintiffs want to question Mr. Scoville on Defendant's "decisions relat[ed] to making an extra-contractual payment prior to the underlying trial . . . ." D.E. 54 at 6. The magistrate judge found that Plaintiffs were "entitled to information regarding Mr. Scoville's . . . decision not to offer a settlement that exceeded the policy limits" because the issue "goes to the heart of Plaintiffs' claim that Defendant acted in bad faith by not making a reasonable settlement offer after failing to timely offer the policy limits." D.E. 57 at 6.

For their part, Defendants contend that "the issue in this case is whether USAA CIC should have tendered its policy limits" after Mr. Flores demanded them in August 2007, not "whether USAA CIC had any obligation to pay monies above its policy limits." D.E. 59 at 10. As Defendant

6

observes, an inquiry into bad faith "extends to [an insurer's] entire conduct in the handling of the claim, including the acts or omissions of [the insurer] in failing to ensure payment of the *policy limits* within the time demands." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004) (emphasis added). The inquiry does not reach the insurer's decision not to offer payment in excess of policy limits, because the insurer has no good-faith obligation to pay such monies. When information in a claim file does not relate to the underlying claim, but was instead generated to assist the insurer's defense of itself in a bad-faith lawsuit, it is protected by the work-product doctrine. Such documents are protected even if they were prepared before a bad-faith claim was filed or before judgment was entered in the underlying claim, so long as the insurer anticipated the filing of the bad-faith claim when it generated the documents. *See Baxley v. GEICO Gen. Ins. Co.*, Case No. 09-343 at DE 88 (N.D. Fla. June 17, 2010). The Court is persuaded by Defendant's argument that the line of questioning Plaintiffs seek directly pertains to Defendant's defense of itself in this lawsuit—rather than to the underlying lawsuit— and, as such, is protected by the work-product doctrine.

Nor can Plaintiff demonstrate a substantial need under Rule 26(b)(3)(A)(ii), Fed. R. Civ. P., for the information it seeks. As explained previously, the insurer has no good-faith obligation to pay in excess of policy limits, so "information regarding Mr. Scoville's . . . decision not to offer a settlement that exceeded the policy limits" is not relevant to the issues before the Court in this case. Instead, the determination of whether Defendant acted in bad faith will rest on its decision not to offer *policy limits* at the time that Mr. Flores demanded them. The Court therefore reverses the limited portion of the magistrate judge's Order allowing Plaintiffs to question Mr. Scoville regarding Defendant's determination of whether to offer Mr. Flores an extra-contractual payment.

### *III. Conclusion*

For the foregoing reasons, Defendant's Appeal and Written Objections to Magistrate Judge's Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel [D.E. 59] are **SUSTAINED**. The magistrate judge's Order Granting In Part and Denying In Part Plaintiffs' Motion to Compel [D.E. 57] is **PARTIALLY REVERSED** in the following limited respects:

1. Under Florida law, the attorney-client privilege extends to communications between Defendant and its counsel concerning the underlying lawsuit and is not subject to breach in the circumstances of this case.

2. Mr. Scoville's and USAA CIC's decision, analysis, and reasons for not offering extra-contractual monies is protected by the work-product doctrine and is not discoverable.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 14th day of August 2012.

                                        **ROBIN S. ROSENBAUM**
                                        **UNITED STATES DISTRICT JUDGE**

Copies:
Counsel of Record